UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
JUN 04 2001
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

| | | |
|---|---|---|
| JERRY KRIM, et al., | ) | Master File No. A:00-CA-776-SS |
| | ) | **(Consolidated)** |
| Plaintiffs, | ) | |
| | ) | CONSOLIDATED CLASS ACTION |
| vs. | ) | COMPLAINT FOR VIOLATION OF THE |
| | ) | SECURITIES ACT OF 1933 |
| PCORDER.COM, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | <u>DEMAND FOR JURY TRIAL</u> |

88

### INTRODUCTION AND OVERVIEW

1.     This is a securities class action against pcOrder.com, Inc. ("pcOrder" or the "Company"), its directors, its controlling shareholder Trilogy Software, Inc. ("Trilogy"), and its investment bankers (collectively, the "Defendants") for violations of the Securities Act of 1933. Plaintiffs bring this action on behalf of themselves and all other purchasers of pcOrder stock issued pursuant to false and misleading Registration Statements filed with the Securities and Exchange Commission ("SEC") by pcOrder in connection with pcOrder's March 1999 initial public offering (the "March Offering" or "IPO") and/or its December 1999 public offering (the "December Offering"). This consolidated action involves solely *strict liability* and negligence claims.

2.     pcOrder provides Internet-based electronic commerce solutions. The Company assists the computer industry's suppliers, resellers and end-users in buying and selling computer products online. During 1999, Defendants issued and sold more than $206 million of pcOrder stock in the IPO and the December Offering at $21 per share and $53.31 per share, respectively. The registration statements and the prospectuses contained therein, used by defendants in connection with the IPO and December Offering (collectively, the "Registration Statements") were each false and misleading in that they represented that pcOrder had a viable business plan and was able to generate and report accurate operating and financial information on a timely basis. The Registration Statements also falsely represented that Trilogy was not competing with pcOrder for revenue.

3.     In fact, as Defendants later admitted in filings with the SEC, the registration statement issued by Defendants in connection with the IPO (the "IPO Registration Statement") and the December Offering (the "December Registration Statement") had been false when filed with and declared effective by the SEC. In filings made by the Defendants with the SEC, Defendants have now admitted that the IPO Registration Statement and the December Registration Statement were false and misleading in that they misrepresented and/or failed to disclose that pcOrder did not possess: (i) a formal operating or business plan to carry out the Company's so-called "strategy"; (ii) basic budgeting and expense controls; or (iii) the ability to report accurate operating information on a timely basis. Defendants also failed to disclose that by the time of the IPO, pcOrder was consistently missing scheduled deployment dates for products, and its software was not stable once

it was deployed. Finally, not only were Trilogy and pcOrder in direct competition for revenues, but Liemandt was exercising complete authority over pcOrder's operations and making unilateral decisions as to whether sales would be generated by Trilogy and pcOrder. In fact, pcOrder's operations were in fact being directed by Trilogy and its Chairman, CEO and controlling shareholder, defendant Joe Liemandt, not by pcOrder's own CEO and President/COO.

4.      The Lead Plaintiffs and the other members of the Class have suffered tens of millions of dollars in damages as a result of their purchases of pcOrder shares. As the truth about pcOrder and its operations reached the market during 2000, the price of pcOrder stock declined to less than $5 per share, 90% below the December Offering price.

## JURISDICTION AND VENUE

5.      The claims herein arise under §§11 and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§77k and 77o. Jurisdiction is conferred by §22 of the Securities Act and venue is proper in this District pursuant to §22 of the Securities Act and 28 U.S.C. §1391(b).

6.      The violations of law complained of herein occurred in substantial part in this District, including the preparation and dissemination of materially false and misleading statements and the omission of material information complained of herein. As a subsidiary of Trilogy, pcOrder maintains its principal place of business in Austin, Texas. In connection with the conduct complained of herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including the mails and interstate telephone communications, and the facilities of a national securities exchange.

## THE PARTIES

7.      Court Appointed Lead Plaintiffs, Gene Burke, David Petrick, Michael Avrutin, Bret Beebe and Yuen Michael Chau, purchased shares of pcOrder common stock issued pursuant to and traceable to the Registration Statements and have suffered damages as a result thereof.

8.      Defendant pcOrder maintains its headquarters at Austin, Texas. pcOrder's common stock traded in an efficient market on the NASDAQ National Market System. In connection with the IPO, pcOrder issued and sold 2,530,000 million shares for gross proceeds of $47 million. Then, in December 1999, pcOrder conducted a Secondary Offering of 3 million shares, 78% of which were

Trilogy's, at $53.31 per share, for gross proceeds of $159.9 million. Of this, 2.333 million shares were Trilogy's and 500,000 shares were pcOrder's. pcOrder is a wholly-owned subsidiary of Trilogy, and together they sold 2,833,000 shares in this offering for $151,027,230 in proceeds. In October 2000, Trilogy reacquired its former subsidiary through a tender offer followed by a two-step merger, and at the time Trilogy took pcOrder private again pcOrder still had $78 million in cash in its coffers from the Offerings. After paying approximately $40 million for the tendered shares, Trilogy received about $37 million in cash along with the database pcOrder created and all of its other technological innovations developed during the Relevant Period it was funded by the public shareholder's investments.

9.    (a)    Defendant Ross A. Cooley ("Cooley") was at all relevant times hereto the nominal Chairman of the Board and Chief Executive Officer of the Company. On November 1, 1996, Cooley was granted a stock option of 875,000 shares at an exercise price of $3.00 per share, with 425,000 shares becoming exercisable at that time, 100,000 shares becoming exercisable on November 1, 1998, 100,000 shares becoming exercisable on November 1, 1999, and 100,000 shares becoming exercisable on November 1, 2000. The remaining 150,000 shares were to become exercisable on November 1, 2003, provided that no change in control had taken place by that date, *e.g.*, the eventual tender-offer whereby pcOrder was taken private in late 2000. However, in February 1999, on the eve of pcOrder's IPO, the pcOrder board accelerated the exercise date for these 150,000 shares so that 50,000 shares became exercisable in February 1999, 50,000 shares became exercisable on November 1, 1999, and 50,000 shares became exercisable on November 1, 2000. This change accelerated the vesting of Cooley's options, allowing him to sell these at inflated prices following the IPO. Cooley prepared, reviewed and signed the Registration Statements filed in connection with the IPO and December Offering. ***In connection with the December Offering, Cooley sold 50,000 shares for gross proceeds of $2.6 million.***

(b)    Defendant Cristina C. Jones ("Jones") was at all relevant times hereto the President and Chief Operating Officer of the Company. Jones prepared, reviewed and signed the Registration Statements filed in connection with the IPO and December Offering. On November 1, 1996, Jones was granted a stock option of 650,000 shares at an exercise price of $3.00 per share.

*In connection with the December Offering, Jones sold 80,000 shares for gross proceeds of $4.2 million*.

(c)     Defendant James J. Luttenbacher ("Luttenbacher") was the Vice President and Chief Financial Officer of the Company.  On February 12, 1998, Luttenbacher was granted a stock option to purchase up to 150,000 shares at an exercise price of $3.00 per share.  Luttenbacher prepared, reviewed and signed the Registration Statements filed in connection with the IPO and the December Offering, *as well as the Company's interim 1999 financial statements filed with the SEC pursuant to Form 10-Q and incorporated by reference in the December Registration Statement*.[1] *In connection with the December Offering, Luttenbacher sold 6,000 shares for proceeds of over $300,000*.

(d)     Defendant Joseph A. Liemandt ("Liemandt") was at all relevant times hereto a director of pcOrder and the *CEO and Chairman of Trilogy's Board of Directors and is sued herein in such capacity*.  Liemandt prepared, reviewed and signed the Registration Statements filed in connection with the IPO and the December Offering.  Liemandt owns approximately 80% of Trilogy's stock and Trilogy owned 79% of pcOrder's stock as of September 30, 1999, and controlled 97% of pcOrder's voting rights.

(e)     Defendant Peter J. Barris ("Barris") was at all relevant times hereto a director of the Company.  Barris prepared, reviewed and signed the Registration Statements filed in connection with the IPO and the December Offering.

(f)     Defendant Linwood A. Lacy, Jr. ("Lacy") was at all relevant times hereto a director of the Company.  Lacy prepared, reviewed and signed the Registration Statements filed in connection with the IPO and the December Offering.

(g)     Defendant Robert W. Stearns ("Stearns") was at all relevant times hereto a director of the Company.  Stearns prepared, reviewed and signed the Registration Statements filed in connection with the IPO and the December Offering.

---

[1]On or about March 15, 2000, defendant Luttenbacher resigned as Chief Financial Officer of the Company.  According to a Company release, he was succeeded by Carleton K. Thompson, pcOrder's Chief Accounting Officer and Vice President of Finance.

10.     The individuals named in ¶8(a)-(g) are the "Individual Defendants."

11.     Defendant Trilogy was at all relevant times hereto a statutory "control person" of the Company.  Trilogy owned at all times relevant hereto 60-90% of pcOrder stock and 94-97% of its voting rights.  Trilogy's CEO and Chairman sat on pcOrder's Board of Directors and controlled its operations.  Trilogy signed the Registration Statements filed in connection with the IPO and the December Offering.  Trilogy's total 1999 revenues were about $140 million. *And yet, in connection with the December Offering, Trilogy sold more than 2.3 million pcOrder shares for proceeds of more than $125 million.*

12.     Defendants Goldman, Sachs & Co. ("Goldman"), Credit Suisse First Boston ("Credit Suisse") and SG Cowen & Co. ("SG Cowen") were the lead underwriters for the IPO and the December Offering, and were primarily involved in selling such shares to the public.

13.     Defendants Goldman, Credit Suisse and SG Cowen are referred to herein as the "Underwriter Defendants."  The Underwriter Defendants are investment banking houses which specialize, *inter alia*, in underwriting public offerings of securities.  They served as the underwriters of the March and December Offerings and received fees of more than $9.67 million collectively. The Underwriter Defendants determined that in return for their share of the March and December Offering proceeds, they were willing to merchandise pcOrder stock in the Offerings.   The Underwriter Defendants arranged a multi-city roadshow prior to the March and December Offerings during which they, and certain of the Individual Defendants, including defendants Jones and Liemandt, met with potential investors and presented highly favorable information about the Company, including forecasts of strong revenue and profit growth.

14.     The Underwriter Defendants also demanded and obtained an agreement from pcOrder that pcOrder would indemnify and hold the Underwriter Defendants harmless from any liability under the federal securities laws.  They also made certain that pcOrder had purchased millions of dollars in directors' and officers' liability insurance.

15.     Representatives of the Underwriter Defendants also assisted pcOrder and the Individual Defendants in planning the Offerings, and purportedly conducted an adequate and reasonable investigation into the business and operations of pcOrder, an undertaking known as a

"due diligence" investigation.  The due diligence investigation was required of the Underwriter Defendants in order to engage in the Offerings.  During the course of their "due diligence," the Underwriter Defendants had continual access to confidential corporate information concerning pcOrder's business, financial condition, internal control and its future business plans and prospects as was later confirmed when defendant SG Cowen was engaged to once again review these same aspects of pcOrder's operation as part of Trilogy's efforts to eliminate the equity interest held by public stockholders of pcOrder.

16.      In addition to availing themselves of virtually unbridled access to internal corporate documents, agents of the Underwriter Defendants, including their counsel Glen Van Ligten of the Venture Law Group for the IPO, and Paul Tobias of Wilson, Sonsini, Goodrich & Rosati for the December Offering, met with pcOrder's management and top executives and engaged in "drafting sessions" between September 1998 and February 1999 and again between November and December 1999.  During these sessions, understandings were reached as to: (i) the strategy to best accomplish the Offerings; (ii) the terms of the Offerings, including the price at which pcOrder stock would be sold; (iii) the language to be used in the Registration Statements; (iv) what disclosures about pcOrder would be made in the Registration Statements; and (v) what responses would be made to the SEC in connection with its review of the Registration Statements.  As a result of those constant contacts and communications between the Underwriter Defendants' representatives and pcOrder's management and top executives, the Underwriter Defendants knew, or should have known, of pcOrder's existing problems as detailed herein.

17.      The Underwriter Defendants caused the Registration Statements to be filed with the SEC and declared effective in connection with offers and sales thereof, including to plaintiffs and the Class.

18.      The Individual Defendants (by reason of their stock ownership and positions with pcOrder) and Trilogy (which controlled approximately 99% of pcOrder's outstanding stock on the

date of the IPO and approximately 80% on the date of the December Offering) were controlling persons of pcOrder. **THE IPO AND THE DECEMBER OFFERING**

19. pcOrder provides Internet-based electronic commerce solutions. The Company's solutions enable the computer industry's suppliers, resellers and end-users to buy and sell computer products online. Established as a separate business unit within Trilogy, its parent corporation, on July 1, 1993, pcOrder was incorporated under Delaware law on July 18, 1994. pcOrder used Trilogy's software under a licensing agreement which required pcOrder to pay royalties to Trilogy. pcOrder also further developed Trilogy's software and improved it.

20. In June 1996, Trilogy transferred the assets of its pcOrder business unit to pcOrder in exchange for substantial equity in pcOrder. As part of that transaction, Trilogy agreed not to use its software to compete with pcOrder for a period of three years, which ended on July 1, 1999.

21. On or about September 4, 1998, pcOrder filed a registration statement for its IPO with the SEC. Through a series of amendments and revisions the SEC would eventually require, a final registration statement was filed on February 9, 1999, and declared effective on or about March 1, 1999.

22. On or about March 1, 1999, pcOrder completed its IPO, selling 2,530,000 million shares to the public at $21.00 per share for net proceeds of $47.2 million. Each of the Individual Defendants signed the Registration Statement issued in connection with the IPO. Thereafter, on December 8, 1999, pcOrder completed the December Offering, issuing 3 million shares pursuant to the December Registration Statement at $53.31 per share for net proceeds of $159.9 million. Each of the Individual Defendants prepared, reviewed and signed the Registration Statements issued in connection therewith. Additionally, defendants Cooley, Jones and Trilogy were statutory sellers pursuant to the December Registration Statement.

23. The IPO Registration Statement filed with the SEC by the Individual Defendants, pcOrder and Trilogy in connection with the IPO included a Prospectus which discussed, among other things, pcOrder's strategy, business, management, outlook and finances.

24. With respect to the Company's "strategy," the IPO Registration Statement stated:

- 7 -

The Company's objective is to be the leading e-commerce technology and content provider to the computer industry. The key elements of the Company's strategy are as follows:

- Leverage Internet technologies to provide communication capability and support complex transactions across a range of computer industry participants;

- Broaden adoption of the Company's e-commerce solutions through relationships with computer industry market leaders;

- Extend the Company's position as an industry-leading source of product information;

- Leverage the Company's position as an independent third-party solutions provider to achieve broad market adoption; and

- Expand software applications functionality to increase automation of the sales, marketing, and channel management functions of the industry.

25.    The statements concerning the Company's so-called "strategy" were materially false and misleading when made, as defendants later admitted, because Defendants failed to disclose that pcOrder lacked even basic financial controls and operating infrastructure as well as any formal operating or business plan to carry out pcOrder's purported "strategy." Moreover, this absence of a formal business plan was then causing pcOrder to, among other things, to miss scheduled deployment dates which was adversely affecting pcOrder's business and relationships with its customers and its ability to generate new customers.

26.    With respect to the Company's methodology used to calculate current expenses and forecast future expenses, the IPO Registration Statement warned that: *"The Company's current and future expense levels are based primarily on its operating plans and estimates of future revenues and are to a large extent fixed costs."*

27.    This statement concerning the Company's current and future expenses was false and misleading when made as, at the time this statement was made, the Company did not possess internal controls which allowed it to even calculate meaningful operating financial information in a timely manner, let alone project pcOrder's future performance.

28.    Page 9 of the IPO Registration Statement also falsely reiterated the current adequacy of pcOrder's operating and financial infrastructure and controls, warning that with respect *to the*

*future,* "Factors that may materially and adversely affect the Company's future revenues and operating results include, but are not limited to, ... the Company's ability to upgrade and develop its internal control systems ...." Similarly, in discussing the "Management of [pcOrder's] Growth," page 17 of the IPO Registration Statement further stated that pcOrder's "growth has resulted in, and can be expected to continue to require, *substantial expansion of the Company's* infrastructure, including operating and *financial systems and controls* and the geographic scope of its operations and customers."

29.     These statements regarding the Company's ability to "upgrade" and "develop" its internal control systems were false and misleading in that at that time the IPO Registration Statement was declared effective on March 1, 1999, the Company lacked expense controls or an ability to report meaningful operation information in a timely manner as later admitted.

30.     The IPO Registration Statement also provided pcOrder's "Statement of Operations Data" for the years 1994-1998. The data for the year ended December 31, 1998 stated:

|  | Year Ended 12/31/98 |
|---|---|
| Statement of Operations Data: |  |
| Revenues: |  |
|     Software and subscriptions | $    12,651 |
|     Content and services | 9,063 |
|       Total revenues | 21,714 |
| Cost of Revenues: |  |
|     Software and subscriptions | 3,242 |
|     Content and services | 7,068 |
|       Total cost of revenues | 10,310 |
| Gross profit (loss) | 11,404 |

31.     Each of the statements detailed in ¶¶26-30 above concerning pcOrder's operating expenses was materially misleading, as Defendants have now admitted that Defendants lacked a reasonable basis for these statements, because pcOrder did not possess the basic infrastructure and/or ability to enable it to obtain and report meaningful operating financial information in a timely

manner. In fact, the numbers reported by Defendants in the IPO Registration Statement were simply estimated by Defendants as Defendants lacked the ability to accurately determine them in a timely fashion.

32.    On or about November 10, 1999, pcOrder caused a Registration Statement to be filed with the SEC.  The Registration Statement contained a Prospectus, which discussed, among other things, pcOrder's business, management, outlook and finances and was declared effective by the SEC on or about December 8, 1999.  In connection with the December Offering, Defendants' sold an additional 3 million pcOrder Class A common shares to the public at a price of $53.31 per share.

33.    Significantly, Trilogy was the selling shareholder of 2,333,000 of the 3 million shares sold in the December Offering, or 78%, and received proceeds of over $124 million in connection therewith.  pcOrder sold another 500,000 shares for proceeds and received proceeds worth almost $27 million in connection therewith.  Defendants Cooley, Jones and Luttenbacher sold millions of dollars worth of their own pcOrder stock in the December Offering as well.

34.    Originally Defendants sought to register 2.5 million pcOrder shares to be sold in the December Offering, including 1,775,000 to be sold by Trilogy.  But, by the time the December Registration Statement was declared effective, Defendants had arranged for Trilogy to sell 2,333,000 of the 3 million shares sold.

35.    Included in the December Registration Statement was a quarterly "Statement of Operations Data" for the nine months ended September 30, 1998 and for the nine months ended September 30, 1999, as detailed below:

|  | Nine Months Ended 9/30/98 | Nine Months Ended 9/30/99 |
|---|---|---|
| Revenues: |  |  |
| Software and subscriptions | $      8,736 | $      14,489 |
| Content and services | 6,423 | 15,136 |
| Total revenues | 15,159 | 29,625 |
| Cost of Revenues: |  |  |
| Software and subscriptions | 2,197 | 3,710 |

| Content and Services | 4,143 | 11,166 |
|---|---|---|
| Total cost of revenues | 6,340 | 14,876 |
| Gross profit (loss) | 8,819 | 14,749 |

36.     The December Registration Statement failed to disclose the fact that as of December 1999, pcOrder still did not possess budget or expense controls which allowed it to accurately report its results from operations. Defendants have now admitted the falsity of their statements concerning pcOrder's operating expenses, revealing that as of December 1999, pcOrder still lacked the ability to even report meaningful operating financial information in a timely manner, and because pcOrder lacked the ability to timely report meaningful operating financial information, Defendants lacked a reasonable basis to report the financial data detailed in ¶35 above.

**Liemandt's Undisclosed Control of PcOrder**

37.     According to page 19 of the IPO Registration Statement, "*Mr. Cooley, in his capacity as the Company's Chairman of the Board and Chief Executive Officer, currently performs various executive and leadership functions, including development of the Company's strategic and operational plans, executive management of new customer and new account relationship activities and recruitment of senior management personnel.*" The December Registration Statement also reiterated those same statements at page 13, stating:

> We particularly depend on the continued services and performance of Ross A. Cooley, our Chairman and Chief Executive Officer ... [who] currently performs various executive and leadership functions, including executive management of new customer and new account relationship activities and recruitment of senior management personnel.

Similarly, page 19 of the IPO Registration Statement states that:

> Ms. Jones, in her capacity as [the Company's] President and Chief Operating Officer, is principally responsible for managing [the Company's] daily operations ....

The December Registration Statement further states at page 13 that:

> We particularly depend on the continued services and performance of ... Christina C. Jones, our President, Chief Operating Officer and founder ...[who] is principally responsible for managing our daily operations and developing our strategic and operational plans.

38.     The statements in the paragraph above were each false and misleading when made as Ross Cooley and Christina Jones played no such roles at pcOrder, rather, they were merely

figureheads with Cooley's actual role akin to that of an outside director as he played no significant role in running pcOrder's affairs, deciding its strategy or implementing any plans. Similarly, defendant Jones was also under defendant Liemandt's control and it was Liemandt (Trilogy's CEO, Chairman and 80% stockholder) and not Jones or Cooley who directed and oversaw pcOrder's day to day operations and who made substantive executive decisions at pcOrder.[2]

**Undisclosed Competition Between Trilogy and pcOrder**

39.    The IPO Registration Statement also expressly provided that Trilogy was not competing with pcOrder and, in fact, was contractually prohibited from doing so, stating:

> In August 1996, the Company and Trilogy entered into an Asset Transfer Agreement, as amended in August 1998 (the "Asset Transfer Agreement"), pursuant to which Trilogy transferred the assets and liabilities of its pcOrder.com division to the Company.... *Trilogy [has] agreed not to engage in, directly or indirectly, any business directly in competition with the Company* for a period of three years after the effective date of the Asset Transfer Agreement.

40.    Months later, in connection with the December Offering, Defendants explained that the contractual prohibition against competition had ended, but again reassured investors by saying:

> An agreement between us and Trilogy that prohibited Trilogy from competing with us expired on June 1, 1999. While *Trilogy does not currently compete directly with us, Trilogy is free to do so*....

41.    The Defendants' representations concerning the existing competition between Trilogy and pcOrder were false and misleading as, at the time of the IPO and continuing throughout 1999, defendant Liemandt was exercising daily operational control over the sales and operations of pcOrder and Trilogy and was exercising control over whether a sale to a customer would be consummated by Trilogy or pcOrder. Thus, Trilogy was competing with pcOrder for revenue and the outcome of this competition was determined by defendant Liemandt. The ultimate effect of defendant Liemandt's directing revenue to Trilogy and away from pcOrder is summarized in the October 2000 SEC filing as detailed in ¶¶44-46 herein. When it came to deciding whether pcOrder

---

[2]Cooley's name was added to pcOrder's executive management team merely to lend credibility to pcOrder's management team as a result of Cooley's experience of having served as a Compaq Senior Vice President and General Manager responsible for all North American business and operations for 14 years, and having served at IBM for 18 years prior to that. Thus, the IPO Registration Statement assured investors that "Ross A. Cooley joined the Company as Chairman and Chief Executive Officer and brought significant computer industry experience and long-term relationships with computer industry participants to the Company."

or Trilogy was to be allocated a sales opportunity or would bear the cost of a joint expense (such as shared software development expenses), it was Liemandt and Trilogy's interests that dictated the decision rather than Cooley's or Jones'. In fact, contrary to repeated statements in the IPO and December Prospectuses, Trilogy and pcOrder were in fact "competing" in the same market for the same customers.

42.     At the time the December Registration Statement was declared effective, pcOrder had not signed up new material, revenue-generating customers for three to five months and pcOrder was experiencing dramatic declines in revenue growth. In fact, at the time of the December Offering, pcOrder had suffered a precipitous 80% decline in revenue growth. The only new customer pcOrder signed up during the months prior to the December Offering was eCommerce Industries, Inc. – for which pcOrder had to pay $3+ million for its relationship via an equity inclusion.

**pcOrder's Undisclosed Product Related Sales Difficulties**

43.     The December Registration Statement claimed that, "[t]o enable the successful deployment and use of [pcOrder's] commerce, content and community solutions, [the Company] provide[s] software integration, customization, training, Web-hosting and other services." What this, and the IPO Registration Statement, failed to reveal, however, was that once deployed, pcOrder software was not stable and that pcOrder had a poor reputation for customer service. This was adversely affecting pcOrder's ability to attract new customers and had resulted in pcOrder not having generated a single new customer for several months prior to the December Offering. In fact, as of December 1999, product failures at pcOrder were so pervasive that pcOrder's sales force would refuse to provide prospective customers with references.

**The Undisclosed Truth**

44.     On October 10, 2000, a special committee of Trilogy's board recommended that Trilogy *reacquire* pcOrder, and met with pcOrder representatives to structure the deal. Trilogy and pcOrder agreed to a cash tender offer for all outstanding shares, followed by a second step merger. On October 10, 2000, SG Cowen gave a presentation about a proposed pcOrder tender offer to Trilogy's Board of Directors. In preparing the materials for this presentation, SG Cowen met with pcOrder's senior management team and reviewed pcOrder's publicly filed information and financial

projections.   From these meetings and document reviews, SG Cowen confirmed that pcOrder remained in a "fragile" condition and its operations remained "substantially impaired and face[d] high near term risk."   Among other problems, pcOrder lacked effective leadership able to execute a turnaround, *still possessed no formal business plan* articulating a strategic direction and had not signed a new revenue generating customer in nearly a year

45.    In the materials prepared for the October 10, 2000 presentation, SG Cowen revealed pcOrder's numerous problems:

MATERIALS PRESENTED BY SG COWEN

Preliminary discussion with the Special Committee of the Board of Directors
October 10, 2000

*     *     *

EXECUTIVE SUMMARY

- SG Cowen has met with [pcOrder's] senior management team and discussed with them the Company's current business and strategy; and reviewed its publicly filed information and financial projections provided by [pcOrder's] management on October 3, 2000.

- *SG Cowen believes that [pcOrder's] operations are substantially impaired* and face high near term risk.   The Company:

  - *lacks effective executive leadership*; it is unclear whether the present senior management team can execute a turnaround strategy.

  - has uncertain management tenure.

  - *has no formal business plan which articulates [pcOrder's] strategic direction*.

  - *has not signed a major new customer in approximately twelve months*.

  - pcOrder's last major contract signed in September 1999 ($6 million).

  - is in the process of focusing its resources on enterprise software applications; however, these *products are still under development and have not been fully deployed*.

  - faces significant competition as numerous companies are providing e-commerce solutions.

  - *suffers from poor employee morale and a lack of confidence in senior management*.

*     *     *

- 14 -

SITUATION OVERVIEW

- Leadership

  - *[pcOrder] suffers from a lack of leadership, formal planning and decisiveness.*

  - *The Company has operated without an experienced Chief Operating Officer (COO).*

    \*   \*   \*

  - *Most executives agree that new leadership is required and have little confidence in the Chairman or the President.*

    \*   \*   \*

  - *New members of the management team appear frustrated and misled.*

- Work force

  - Very low morale.

  - Experiencing high turnover across all departments.

- Operations

  - *No formal operating or business plan exists.*

  - *[pcOrder] has consistently missed schedule deployment dates.*

  - Once deployed, *software not stable*.

  - Reputation for poor customer service.

    \*   \*   \*

- Sales

  - Approximately 20 sales professionals, but can only field two to three sales teams.

  - 100% turnover in the sales force during the last year.

    \*   \*   \*

  - Even if [pcOrder] closes a major contract, it *cannot deliver the software without significant assistance from [Trilogy]*.

  - Sales force does not like to provide prospective customers with references.

    \*   \*   \*

- ***Financial Controls/Reporting***

  - ***Until early 2000, [pcOrder] did not have a budget, expense controls or an ability to report meaningful operating financial information on a timely manner.***

- ***Until early 2000, pcOrder did not have a budget, expense controls or an ability to report meaningful operating financial information on a timely manner.***

46.      In suggesting that pcOrder immediately retain a crisis manager as COO, SG Cowen again noted that not only had pcOrder lacked a formal business plan in connection with its "original strategy," the Company still had "no formal business plan in place."

**False "Risk Factors"**

47.      The "risk factors" included in the Registration Statements were nothing but generic warnings that were highly misleading themselves in that, among other things, they misrepresented as future contingencies developments that were then having a material adverse impact on pcOrder's business.   Thus, the "Risk Factors" included in the Registration Statements were false and/or misleading because pcOrder was not merely facing the potential risks or dangers described therein, but rather these factors were already adversely affecting pcOrder's business at the time the Registration Statements were declared effective.

CLASS ACTION ALLEGATIONS

48.      Plaintiffs bring this action as a class action, pursuant to Fed. R. Civ. P. 23(a) and (b)(3), on behalf of a class consisting of all persons who purchased pcOrder common stock issued pursuant to and traceable to the IPO Registration Statement and/or the December Registration Statement (the "Class"). Excluded from the Class are the Defendants named herein, the officers and directors of pcOrder, members of the immediate families of such officers and directors, and subsidiaries and affiliates of Defendants and their officers and directors.   Class members are so numerous that joinder of them is impracticable. Common questions of law and fact predominate and include: (i) whether Defendants violated the Securities Act; (ii) whether the IPO Registration Statement and/or the December Registration Statement misrepresented material facts; and (iii) the extent of and appropriate measure of damages.

- 16 -

49.     Plaintiffs' claims are typical of all Class members' claims.  Plaintiffs have selected counsel experienced in class and securities litigation and will fairly and adequately protect the interests of the Class.  Plaintiffs have no interests antagonistic to those of the Class.

50.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for members of the Class individually to seek redress for the wrongful conduct alleged.

51.     Plaintiffs know of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

## COUNT I

### Against pcOrder, Trilogy and the Individual Defendants
### For Violation of Section 11 of the Securities Act

52.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.  Plaintiffs assert only strict liability and negligence claims against pcOrder, Trilogy and the Individual Defendants for violations of the Securities Act.  Plaintiffs do *not* assert claims of fraud or intentional misconduct.

53.     This Count is asserted against pcOrder, Trilogy and the Individual Defendants for violations of §11 of the Securities Act, 15 U.S.C. §77k, on behalf of all persons who purchased shares of pcOrder stock issued pursuant to the IPO and December Offering and traceable to the IPO Registration Statement and/or the December Registration Statement, as described above.

54.     pcOrder was the registrant and issuer for the securities issued pursuant to the IPO and December Offering.  As the issuer of shares, pcOrder is *strictly liable* to plaintiffs and Class members for the misstatements and omissions contained in the Registration Statements.  The Individual Defendants were officers and/or directors of the Company at the time of the IPO and/or December Offering, and, along with pcOrder and Trilogy, were responsible for the contents of the Registration Statements.  Defendant Liemandt was the controlling officer/director of both pcOrder and Trilogy throughout the Relevant Period.  The Individual Defendants are signatories of the Registration Statements. Trilogy, Cooley and Jones were statutory sellers with Trilogy selling more

than 2.3 million pcOrder shares pursuant to the false and misleading December Registration Statement.

55.     Each of the Defendants issued, caused to be issued and/or participated in the issuance of the materially false and misleading Registration Statements, which misrepresented and failed to disclose, *inter alia*, the material facts concerning pcOrder's business and financial results, as set forth herein.

56.     None of the defendants named in this Claim made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement and Prospectus were true and did not omit any material facts and were not misleading.

57.     Each of the defendants named in this Claim issued, caused to be issued and participated in the issuance of materially false and misleading written statements to the investing public which were contained in the Registration Statements, which misrepresented or failed to disclose, *inter alia*, the adverse facts set forth above.  By reasons of the conduct herein alleged, these defendants violated, and/or controlled a person who violated, §11 of the Securities Act.

58.     Plaintiffs and other members of the Class purchased pcOrder common stock issued pursuant to the IPO or the December Offering and traceable to the false and misleading IPO Registration Statement and/or December Registration Statement without knowledge of the untruths or omissions alleged herein.  Plaintiffs and the other members of the Class could not have reasonably discovered the nature of Defendants' untruths and omissions.

59.     As a result of their purchases of pcOrder shares, Plaintiffs and the other members of the Class have sustained damages.

60.     This action was brought within one year after the discovery of the untrue statements and omissions and less than three years after the IPO and December Offerings.

61.     The Defendants are liable to plaintiffs and the other members of the Class.

## COUNT II

### Against the Underwriter Defendants for
### Violations of Section 11 of the Securities Act

62.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.  Plaintiffs assert only negligence claims against the Underwriter Defendants for violations of the Securities Act.  Plaintiffs do *not* assert claims of fraud or intentional misconduct.

63.     This Count is asserted against the Underwriter Defendants for violations of §11 of the Securities Act, 15 U.S.C. §77k, on behalf of all persons who purchased shares of pcOrder issued pursuant to and traceable to the IPO Registration Statement and/or the December Registration Statement.

64.     The Underwriter Defendants issued, caused to be issued, and participated in the issuance of the materially false and misleading IPO Registration Statement and December Registration Statement, which misrepresented or failed to disclose, *inter alia*, the material facts concerning the business of pcOrder as set forth herein.

65.     As a direct and proximate result of the false and misleading statements in the IPO and December Registration Statements, pcOrder common stock was sold in the IPO and December Offering at prices far exceeding the true value of the shares.

66.     Plaintiffs and other members of the Class purchased pcOrder common stock pursuant to and traceable to the IPO and December Offering without knowledge of the untruths or omissions alleged herein.  Plaintiffs and the other members of the Class could not have reasonably discovered the nature of Defendants' untruths and omissions.

67.     As a result of their purchases of pcOrder shares, plaintiffs and other members of the Class have sustained damages.

68.     In connection with the IPO and the December Offering, the Underwriter Defendants, directly or indirectly, used means and instrumentalities of interstate commerce and the U.S. mails.

69.     The Underwriter Defendants sold stock in the offerings as defined in §11(a)(5) of the Securities Act.  The Underwriter Defendants were, therefore, responsible for the contents and dissemination of the Registration Statements.

70.    As underwriters of the offering, each Underwriter Defendant owed to the purchasers of the shares of pcOrder, including plaintiffs and the other members of the Class, the duty to make a reasonable and diligent investigation of the statements contained in the Registration Statements at the time they became effective, to ensure that said statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading. In the exercise of reasonable care, the Underwriter Defendants should have known of the material misstatements and omissions contained in the Registration Statements as set forth herein. As such, the Underwriter Defendants are liable to plaintiffs and the other members of the Class.

71.    None of the defendants named in this Claim made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statements were true, did not omit any material facts and were not misleading.

72.    Each of the defendants named in this Claim issued, caused to be issued and participated in the issuance of materially false and misleading written statements to the investing public which were contained in the Registration Statements, which misrepresented or failed to disclose, *inter alia*, the adverse facts set forth above. By reasons of the conduct herein alleged, these defendants violated, and/or controlled a person who violated, §11 of the Securities Act.

73.    This action was brought within one year after the discovery of the untrue statements and omissions and less than three years after the IPO and December Offering.

74.    By reason of the foregoing, the Underwriter Defendants have violated §11 of the Securities Act and are liable to plaintiffs and the other members of the Class, each of whom has been damaged by reason of such violations.

### COUNT III

**Against the Individual Defendants and Trilogy**
**for Violations of Section 15 of the Securities Act**

75.    Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

76.     This Count is asserted against the Individual Defendants and Trilogy for violation of §15 of the Securities Act, 15 U.S.C. §77o.

77.     The Individual Defendants, by virtue of their positions, stock ownership, and specific acts as described herein, had the power, and exercised the same, to control the representations and actions of pcOrder. Defendant Liemandt, via his ownership of a controlling equity interest in Trilogy and his positions as Chairman and CEO of Trilogy, controlled Trilogy and via its control of a majority of the voting shares of pcOrder and its insiders on pcOrder's Board, controlled pcOrder.

78.     Each of the Individual Defendants and Trilogy were culpable participants and are jointly and severally liable to plaintiffs and the members of the Class as a "control person" pursuant to §15 of the Securities Act.

79.     As a result of the foregoing, plaintiffs and the members of the Class have suffered damages.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs on their own behalf, and on behalf of the other members of the Class, pray for judgment as follows:

A.     Declaring this action to be a proper class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Class defined herein;

B.     Awarding plaintiffs and the members of the Class compensatory damages;

C.     Awarding plaintiffs and the members of the Class pre-judgment and post-judgment interest, as well as their reasonable attorneys' fees, expert witness fees and other costs; and

D.     Awarding such other relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury.


DATED:  June 4, 2001                JAMES D. BASKIN III
                                    Texas Bar No. 01872050


                                    JAMES D. BASKIN III

- 21 -

919 Congress Avenue, Suite 1000
Austin, TX 78701
Telephone: 512/322-9250
512/322-9280 (fax)

MILBERG WEISS BERSHAD
 HYNES & LERACH LLP
WILLIAM S. LERACH
DARREN J. ROBBINS
SPENCER A. BURKHOLZ
DENISE M. DOUGLAS
MARY K. BLASY
600 West Broadway, Suite 1800
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

MILBERG WEISS BERSHAD
 HYNES & LERACH LLP
PATRICK J. COUGHLIN
100 Pine Street, Suite 2600
San Francisco, CA 94111
Telephone: 415/288-4545
415/288-4534 (fax)

Co-Lead Counsel for Plaintiffs

C:\Eudora\Attach\KRJ81147.cpt

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of June 2001, I served a true and correct copy of Consolidated Class Action Complaint for Violation of the Securities Act of 1933 on the below listed counsel of record by regular first class mail.

COUNSEL FOR DEFENDANTS
Noel M. Hensley
HAYNES & BOONE, LLP
3100 Nationsbank Plaza
901 Main Street
Dallas, Texas 75202-3789

Robert O'Boyle
HAYNES & BOONE, LLP
600 Congress Ave., Suite 1600
Austin, Texas 78701

Shirli Weiss
GRAY, CARY, WARE & FREIDENRICH
401 B. Street, Suite 1700
San Diego, California 92101-4297

James Cannon
GRAY, CARY, WARE & FREIDENRICH
1221 South MoPac, Suite 400
Austin, Texas 78746

James E. Maloney
BAKER BOTTS, LLP
3000 One Shell Plaza
910 Louisiana Street
Houston, Texas 77002

Patrick O. Keel
BAKER BOTTS, LLP
98 San Jacinto Blvd., Suite 1600
Austin, Texas 78701

Gary Ewell
VINSON & ELKINS, L.L.P.
One American Center, Suite 2700
600 Congress Ave.
Austin, Texas 78701

Karl S. Stern
VINSON & ELKINS, L.L.P.
2300 First City Tower
1001 Fannin
Houston, Texas 77002-6760

COUNSEL FOR PLAINTIFFS
Fred Taylor Isquith
WOLF HALDENSTEIN ADLER FREEMAN
& HERZ, LLP
270 Madison Avenue
New York, NY 10016

Lester L. Levy
WOLF POPPER LLP
845 Third Avenue
New York, NY 10022

Harvey Greenfield
LAW OFFICES OF HARVEY
      GREENFIELD
60 East 42nd Street, Suite 2001
New York, NY 10165

Richard Bemporad
LOWEY DANNENBERG BEMPORAD &
      SELINGER, P.C.
The Gateway, One N. Lexington Avenue
White Plains, NY 10601

Ira M. Press
KIRBY, MCINERNEY & SQUIRE, LLP
830 Third Avenue, 10th Floor
New York, NY 10022

Andrew L. Barroway
SCHIFFRIN & BARROWAY, LLP
Three Bala Plaza East, Suite 400
Bala Cynwyd, Pennsylvania 19004

Bruce Murphy
LAW OFFICES OF BRUCE G. MURPHY
265 Llwyds Land
Vero Beach, Florida 32963

Paul J. Geller
CAULEY, GELLER, BOWMAN & COATES, LLP
2255 Glades Road, Suite 421A
Boca Raton, Florida 33431

Spence Burkholz
Mary Blasy
MILBERG WEISS BERSHAD HYNES &
      LERACH LLP
600 West Broadway, Suite 1800
San Diego, California 92101-5050

Patrick J. Coughlin
MILBERG WEISS BERSHAD HYNES &
      LERACH LLP
100 Pine Street, Suite 2600

2

Marc S. Henzel
LAW OFFICES OF MARC S. HENZEL
210 West Washington Square, Third Floor
Philadelphia, Pennsylvania 19106

Thomas E. Bilek
HOEFFNER, BILEK & EIDMAN LLP
440 Louisiana, Suite 720
Houston, Texas 77002

J. Hoke Peacock II
ORGAIN BELL & TUCKER, LLP
470 Orleans Street
Beaumont, Texas 77701

Jules Brody
STULL, STULL & BRODY
6 East 45th Street, 4th Floor
New York, NY 10017

James D. Baskin III